WARSAW–WILKINSON CO. v. EXCHANGE MUT. FIRE INS. CO.

(Circuit Court, E. D. Pennsylvania. December 14, 1911.)

No. 560.

INSURANCE (§ 173*)—MUTUAL POLICY—CONSTRUCTION.

A mutual fire policy provided for payment of such charges as might be levied by the board of directors against the insured or the deposit made thereunder and the deposit of $102.73 in cash as security therefor, and in consideration thereof insured certain property, real and personal, "to an amount not exceeding $7,500." It also provided that, if a deposit should be less than the premium payable on the property for the amount of insurance named at the rate charged by the majority of stock companies engaged in the fire insurance business in the locality in which the risk was situated, then it was agreed that the amount of insurance should be reduced pro rata. The insurance under the policy was figured at the rate of $1.29 per $100 on the building and $1.42 on contents, but the company proved that a majority of stock companies engaged in the fire insurance business in that locality charged $1.84 per $100 on the buildings and $2.09 on the contents. *Held* that, under the reduction clause, defendant was only bound to pay on the basis of such an amount of insurance as plaintiff's deposit would purchase at the stock companies' rates so proved.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 358; Dec. Dig. § 173.*]

At Law. Action by the Warsaw-Wilkinson Company against the Exchange Mutual Fire Insurance Company. Judgment for plaintiff for interest on an amount tendered.

See, also, 181 Fed. 330, 104 C. C. A. 518.

Rudolph M. Schick, for plaintiff.

H. B. Gill, for defendant.

J. B. McPHERSON, District Judge. The parties have agreed to try this case before the court without a jury. I find the facts to be as follows:

In December, 1907, the plaintiff held a policy issued by the defendant (hereinafter called the "Company") which would expire on January 5, 1908. On December 20th the company wrote to the plaintiff, offering (and inclosing for acceptance) a renewal policy to January 5, 1909. This policy is dated December 19, 1907, and is hereby made a part of this finding. It calls for "the payment of such charges as may be levied by the board of directors against the assured or the deposit made hereunder, and the deposit of the sum of $102.73 in cash as security therefor;" and in consideration thereof, and of the various stipulations in the policy, offered to insure certain property, real and personal, "to an amount not exceeding $7,500." It was agreed at the trial that the policy thus offered contained no co-insurance clause, and it also appears from inspection of the writing that the deposit asked for was, as already stated, $102.73. The policy also contained, then and at all times thereafter, as one of its stipulations, the clause that has given rise to the present controversy:

"If the deposit made by the insured at the time this policy is issued should be less than the premium which would be payable on the property hereby

insured for the amount of insurance above named at the rate charged by the majority of the stock companies engaged in the fire insurance business in the locality in which this risk is situated, then it is understood and agreed that the amount of insurance contracted for herein, and all claims for losses thereon, shall be reduced pro rata on the several and separate items thereof.
* * * "

The policy was not acceptable to the plaintiff, and was returned under date of December 23d, with a statement of the reason for declining it:

"We are returning the bill and policy as we note you have made it out on a basis of 100 per cent. We wish this made out on an 80 per cent. basis, as all our other policies are made out in that way, and we presume your bill for the amount will be reduced in proportion."

This "basis of 100 per cent." meant that, if the whole amount of insurance on the property covered by the policy should at the time of a fire be less than 100 per cent. of the actual cash value of such property, the company should only be liable for such portion of the loss as the amount insured by its policy should bear to 100 per cent. of such actual cash value.

The company replied on December 26th, stating:

"In accordance with your request we have changed the co-insurance clause from 100 per cent. to the 80 per cent. clause, and return you herewith policy No. 50,159, which we trust you will now find in order."

The effect of this was to substitute 80 per cent. for 100 per cent. in the provision just referred to.

In the same letter the company added:

"In order that our records may be correct, we ask you to advise us the rate which the stock companies are charging you per thousand with the 80 per cent. clause. If it is not in accordance with our policy, proper changes will be immediately made."

It is evident from this letter that the stock rates being charged on this risk were not then known to the company, and therefore that the proper amount of deposit was still to be determined. On December 27th the plaintiff replied, as follows:

"In reply to your favor of December 26th, we are sending you a policy for $1,000 made by the Caledonian Insurance Company, * * * on which you will see the rate charged. Please return the same with corrected bill," etc.

The Caledonian policy was only on the building; the rate being $1.29, and on December 30th the company replied:

"We have your favor of the 28th inst. inclosing Caledonian policy covering your building at Warsaw, New York, and note that the rate on this building is 1.29. Upon referring to our records we find that the rate on the building under our policy was 1.29, and on contents 1.42. Has the rate on the contents been reduced? If the rate on the contents of the building has been reduced from 1.42 to 1.29, we ask you to return our policy 50,159 in order that the deposit thereunder may be corrected."

This letter was not answered promptly, and on January 6, 1908, the company wrote again:

"Will you not give us the information asked for in our letter of December 30th? We find that the rate under our policy was 1.29, and on contents 1.42.

Has the rate upon your contents been reduced? If so, will you not return the policy 50,159 in order that we may make the proper corrections."

Thereupon the plaintiff replied immediately:

"In reference to above we find the rate is as you state, 1.29 on buildings, 1.42 on contents."

Up to this time, the plaintiff had paid no money, made no deposit, and had not accepted the policy. In this state of affairs the plaintiff wrote on February 28th:

"We inclose check for $102.73, and policy No. 50,159, $7,500 on our buildings, machinery and patterns. We wrote you on the 23rd ultimo (evidently meaning Dec. 23) asking you to put it on an 80 per cent. basis, which you did. Since then we have changed back our policies to the 100 per cent. basis and return you the policy to be put back where you originally made it. We regret very much the unnecessary trouble we have given you in this matter, but we feel that the present arrangement will be much more satisfactory to all concerned."

On March 2d the company acknowledged receipt of the check, and added:

"In accordance with your request we have changed your policy 50,159. attaching the 100 per cent. clause. We trust the policy will now be found in order. Should you desire any further changes made, advise us and we will give same our immediate attention."

On the surface of this correspondence the parties appeared to have reached a common ground; and to have agreed finally on a contract, but there seems still to have been a misunderstanding, for on March 31st the plaintiff wrote as follows:

··"We wrote you February 20th (this no doubt means February 28th) returning policy 50,159 for $7,500, and asking you to write it straight 100 per cent. insurance instead of 80 per cent. co-insurance. We note that instead of writing it the way we intended, you have written it 100 per cent. co-insurance. We certainly did not return the policy to have it made less valuable. We inclose the policy again, and request you to write it straight insurance."

,. Thereupon the company replied on April 2d:

"We have your favor of the 31st ult. returning policy 50,159 for $7,500. We have placed new form on this policy omitting the· co-insurance clause entirely, which we trust is in accordance with your desire.
' "Will you kindly advise us if you are carrying any insurance with the co-insurance clause?"

The contract was therefore agreed upon at last, and by its express terms it provided inter alia as above set forth—that, if the deposit made by the insured should be less than the premium for which the amount insured could be obtained from the majority of stock companies doing a fire insurance business in Warsaw, the amount insured by the company's policy should be proportionately reduced. ·

A fire occurred on August 27th, and proofs were made and accepted. The company admitted liability for $1,721.72, and paid that sum after the present suit was brought. The plaintiff sued for $2,-505.68, and the question is whether under the terms of the policy the company was liable in the larger amount. The answer depends on the proper construction of the clause just referred to, and this I think is no longer open for discussion in view of the decision of the Court

of Appeals for this circuit in Exchange Mutual Insurance Co. v. Warsaw-Wilkinson Co., 181 Fed. 330, 104 C. C. A. 518. It was there held:

"This was an action on a fire insurance policy for $7.500. The value of the property insured was $33,000, and the loss was $12,000, distributed in various amounts over the building and it contents; the total insurance being some $19,800, and the defendant's share, on the basis that the policy held good for the face of it, being $2,505.58, for which amount suit was brought. The defendant disputes its liability for this amount, and contends that it is only liable for $1,721.72; there being a clause in the policy by which the amount for which it was written was to be reduced under certain circumstances, which clause it is claimed is operative here, and reduces the policy to $5,158, instead of $7,500, with a corresponding reduction in the amount due on it. The company is a mutual company, and the insurance was effected by the deposit of $102.73, by way of premium, and the agreement on the part of the insured to pay such charges as might be levied by the directors against it. And, the clause having evidently been inserted in the policy for the protection of the company against too low a rate, the question here is the construction to be given to it, and whether a case is made out within it.

" * * * The clause in controversy in terms provides for a reduction of liability from the amount for which the policy is written upon certain specified conditions; these conditions in substance being that, if the deposit made by the insured by way of premium, at the time of taking out the insurance, is less than would be payable on the property insured, for the amount of insurance named in the policy, at the rate charged by a majority of the stock companies engaged in business, in the locality of the risk, then the amount of insurance contracted for is to be reduced proportionately. The insurance, in other words, is to be put on a stock company basis, as determined by the rate charged by a majority of such companies doing business in the vicinity. The criterion of this is the stock company rate there in vogue, on the same kind of property, and not the average on all classes without regard to the nature of the risk, as held by the court below, which is a clear departure from the terms of the policy. It is only by taking the stock company rates on similar property in the neighborhood that it can be determined what the stock company rate would be on the property insured, which rate by comparison is to decide the extent of liability on the policy; the agreement being that, if the deposit made by way of premium is less than this, there shall be a corresponding reduction. Expressed briefly, the deposit made was to pay for the same amount of insurance that it would have bought on the property insured from the majority of the stock companies having risks in that locality, and no more than that, notwithstanding the amount for which it was written. And this could only be judged by the rates charged by such companies on the same kind of property. There is no ambiguity in this, nor does it read into the policy limitations not found in it. It is simply taking the policy as it stands, and giving it its natural, not to say unavoidable, construction."

The Court of Appeals then turned to the question whether the company's affidavit of defense was sufficient, and said:

"This being so, the affidavit of defense was sufficient, and judgment could not rightly be given in the face of it for more than was there admitted. Pursuing the terms of the policy, it was there expressly averred, that:

" 'The deposit of $102.73 made by the plaintiff was less than the premium which would be payable on the property insured by the policy sued on for the amount of insurance named therein at the rate charged by the majority of the stock companies engaged in fire insurance business in the locality in which the risk was situated.'

"Not stopping with this, it was further averred that the $102.73 deposited by the plaintiff was at the rate of $1.29 per $100 of insurance on the buildings, and $1.42 on the contents, and that the rates charged by a majority of the stock companies engaged in the fire insurance business in that locality,

when the policy was issued, was $1.84 per $100 for like insurance on such buildings, and $2.09 on the contents; these, as it is said, being the rates charged by such companies for similar insurance upon the risk expressed in the policy in suit, which reduced accordingly the amount of insurance contracted for, the total amount of insurance upon this basis for which the defendant was liable being $5,158, and its proportionate amount of the loss incurred being $1,721.12, which sum it was at all times willing to pay, constituting as it did the amount for which alone it was liable. The defendant in these averments brought itself squarely within the cause of the policy invoked, by which, as we construe it, it was protected from any larger liability than it admitted, and it was error therefore to give judgment for more than that."

These averments of the affidavit of defense have now been proved, and I find the fact to be that all the stock companies in Warsaw had established a rate upon this very property of $1.84 upon the building and $2.09 on the contents. At this rate, the deposit of $102.73 would have purchased not $7,500 of insurance, but $5,158 only, and the company's share of the loss is therefore $1,721.72, and not $2,505.58. The evidence at the trial not only complies with the test established by the Court of Appeals—"the stock company rate there in vogue on the same kind of property  *  *  *  the stock company rates on similar property in the neighborhood  *  *  *  the rates charged by such companies on the same kind of property"—but goes further, and proves the stock company rates on the precise property owned by the plaintiff. As it seems to me, this is decisive, and I need only add that if the company had paid principal and interest it would now be entitled to judgment. Having paid the principal only, it is still liable for interest, and judgment for the proper amount may therefore be entered in favor of the plaintiff.